The opinion of the Court was deliverd by
DaRGAN, Ch.
When the testator said in his will, “I give and bequeath to my beloved son, Patrick Carson, four negroes, Primus, Adam, Deborah and Phoebe,” &c., he gave them in terms which by their legal force and meaning would convey to Patrick an absolute estate in said negroes. This clause, in which the testator evidently disposed of his whole estate in the negroes named, must be construed in pari materia with the subsequent clause, in which he says, “ I desire all the above legacies” (including the one to Patrick, just recited,) “ to continue to the legatees during their natural lives, and if any should die without heirs of their bodies begotten lawfully, then their and every of their parts so dying without lawful issue, their parts of my estate to be equally divided among *267 my surviving heirs.” Upon a superficial examination, these clauses would seem to be inconsistent. While the first gives an estate in fee, the last seems to restrict the estate given to the life of the legatee. It is the duty of the Court- so to construe the will, as to give efficacy, if that be possible, to every part of clause, so as to make it a harmonious whole. There is a construction of which the will is susceptible, by which both of these apparently inconsistent clauses may stand harmoniously together.
When the testator expresses himself to the effect that the legacy should continue during the life of the legatee, he does not mean to cut down the estate in fee, previously given, to a life estate ; but intended to engraft upon it a limitation which was to take effect upon a contingency. The will of the testator, according to this construction, would read thus: He gave the negroes, Primus, &c., to his son, Patrick, and his heirs forever, but if Patrick should die without lawful issue, then the estate of Patrick was to be merely a life estate, and he gave the negroes to be equally divided among his surviving heirs ; thus creating, as is by no means uncommon, an estate in fee, defeasible upon a future contingent event.
Such is what we understand to have been the intention of the testator. We have now to enquire whether the intention of the testator as respects the limitation over can be carried into effect; in other words, whether it be valid as being within the period of remoteness.
“ Dying without issue,” technically imports a dying without issue generally ; and a limitation predicated upon such indefinite failure of issue cannot take effect for remoteness. But if qualifying and restrictive words are employed, which explain the meaning to be a dying without issue at a particular time within life or lives in being, and twenty-one years afterwards, then the limitation over, if sufficiently certain, may take effect. Among these explanatory words, or provisions of a will which have been considered as restrictive upon the meaning of the *268 expression dying 'without issue, none have been more potential than a gift to the survivors of a class who should be living at a period within the time prescribed by the law against perpe-tuities. Where the gift is to survivors, the testator is supposed to intend a personal benefit to those who do survive. Only those who survive can take, and those who die before the time to which the survivorship refers take no transmissible interest. If the gift be to the survivors, or their issue, or legal representatives, as in Postell vs. Postell, Bail. Eq., 390, and other cases, it is evident that no personal benefit was intended to the survivors as such, but a transmissible interest; in which case the gift to survivors would have no qualifying effect upon the generality of the expression, dying without issue.
When we apply these well settled principles to the construction of this will, the result cannot be uncertain. The testator, in substance says, that if his son Patrick shall die without issue, the legacy given to him shall be equally divided among his surviving heirs. The very term surviving necessarily implies a period at which the survivorship is to exist. It has no sense or meaning otherwise. To what period then does the survivorship relate ? There are but two periods to which it can reasonably be referred, namely the 'death of the testator, or the death of the first taker, Patrick. The idea that the sur-vivorship relates to the death of the testator is excluded by the express terms of the will. For the legacy to Patrick, ’ as to the other legatees, was to continue to them during life. Besides this, it is now well settled, that where the survivor-ship refers to no definite period, those who can bring themselves within the description at the death of‘the testator are supposed to be intended. But where a remoter period is referred to as the time of distribution, or of the vesting of the rights of the survivors ; as where a precedent life estate is interposed, at the termination of which the survivors are to take, then those and those only who can bring themselves within the description, are entitled to take. They take as survivors, *269 to the exclusion of the representatives of those who may have died before that time. The period of survivorship in this case must be referred to the death of Patrick, in which event the legacy given to him is to go to such of the testator’s heirs as should be then living. Upon the foregoing views, we are of opinion that the limitation over to the surviving heirs is valid, and must take effect on the happening of the contingencies on which it is made to depend. This construction is fully sustained by the analogous ease of Evans vs. Godbold 6 Rich. Eq. 27.
It is obvious that the plaintiff’s right depends upon a double contingency. Before he would be entitled to take, Patrick must die without issue living at his death, and he (the plaintiff) must be at that time surviving. On the failure of either event he takes nothing.
A question has been made in this case whether a party entitled to a contingent remainder, or interest, should have the remedy sought by the plaintiff for the preservation of the property in ease his contingent rights should hereafter become vested. It would be unwise and unsafe to hold that no contingent interest shall be protected in this way. An interest may be legally contingent, .and yet so certain as to amount in value to a vested estate. Take the case of an estate to one and his issue, and if he should die without issue living at the time of his death, then over to a third person with a transmissible interest. Suppose the first taker to be without issue, and so superannuated as to preclude the physical possibility of having issue. Yet by legal possibility such a person might have issue, and the estate of the remainder-man, though technically, and by every legal definition is contingent, its future vesting would be more than probable. Would such a party not be entitled to the remedy ? On the other hand, between the lapse or expiration of the estate of the first taker, and the vesting of the contingent remainder, there might be interposed the lives of a large number of robust children, *270 grand-children, &c., all of whom must die in the life time of the first taker, before the contingent remainder can vest; making the vesting of that estate a very remote possibility.(a) It would not be consistent that a person under these circumstances should be allowed to harass and vex the party in possession with a proceeding like this. I have supposed extreme cases, but they illustrate the diffiulty, and show that it would be unsafe to lay down any arbitrary or inflexible rule.
In this case, the Court is of opinion, that the plaintiff has made a reasonable showing, to entitle him to relief. He has established a claim, the vesting of which, though still contingent, is within a reasonable probability. Patrick Carson is advanced in years, infirm, and unmarried. He is not likely to marry hereafter, or to have issue. He has or had one child, who, has been removed by relatives from South Carolina, and who, by the last accounts, seven years ago, was reported to be dead. If Patrick Carson dies without leaving issue, which under the circumstances is highly probable ; and if this plaintiff should then be living, which is also not improbable, then he (this plaintiff) would have a vested interest. Under these circumstances, the Court is of the opinion, that he is entitled to protection and relief. It is so ordered and decreed.
• It is further ordered and decreed, that the circuit decree dismissing the bill be reversed, and that the ease be remanded to the Circuit Court, to the intent, that the said court may consider and adjudge the mode and measure of relief to 'which the plaintiff- is entitled.
Donkin and Wabdlaw, CC., concurred.

Decree reversed.-

 3 Danl., Pr., 1851; Williams vs. Duke of Bolton, 3 P. Wins., 268, n.